**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SHARON SCHUTTE,** <br> Plaintiff, <br><br> v. <br><br> **IMLAY TOWNSHIP, IMLAY TOWNSHIP BOARD, UNKNOWN IMLAY TOWNSHIP OFFICIALS, in their official and individual capacities, and JOHN/JANE DOE GOVERNMENTAL ACTORS 1– 20, whose identities are presently unknown,** <br> Defendants. | Case No. 2:26-cv-12671- LVP-DRG <br> Hon. Linda V. Parker; <br><br> Mag. Judge David R. <br><br> Grand |

---

**EMERGENCY — IMMEDIATE REVIEW REQUESTED DURING NORMAL BUSINESS HOURS**
**NO AFTER-HOURS JUDICIAL REVIEW IS REQUESTED**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Sharon Schutte moves under Fed. R. Civ. P. 65 and E.D. Mich. LR 65.1 for a temporary restraining order preserving the present status quo. This is a noticed request. Plaintiff does not request ex parte relief or after-hours judicial review. Consistent with Judge Parker's practice guidelines, Plaintiff will not file a preliminary-injunction motion until Imlay Township has been formally served with the summons and Complaint.

The October 30, 2025 state-court order now provides written authority for Imlay Township to enter Plaintiff's property and structures and remove dogs after disposition of the Michigan Supreme Court application. The Michigan Supreme Court denied leave on May 22, 2026. On May 26, Township counsel declined to

1

agree to any formal stay but stated that counsel would receive a heads-up before Township action; no length or method of notice was defined, and later follow-up communications received no response. Plaintiff's signed Affidavit states that twelve dogs remained on June 17, 2026. Counsel presently understands that the number may now be lower because Plaintiff has continued placements. Removal, dispersal, transfer, adoption, sale, or euthanasia would irreversibly destroy unique animals, relationships, bloodlines, and more than forty-two years of preservation work.

Plaintiff therefore requests an immediate order, during normal business hours, restraining Imlay Township, the Imlay Township Board, their officials, officers, agents, employees, attorneys, contractors, and all persons acting in concert or participation with them from:

- entering Plaintiff's property or structures for the purpose of removing dogs;

- removing or seizing any of Plaintiff's remaining dogs;

- transferring, dispersing, adopting out, selling, euthanizing, or otherwise disposing of the dogs; and

- otherwise interfering with Plaintiff's possession of the dogs, pending expedited hearing and further order of this Court.

This requested relief preserves only the present status quo. It does not ask the Court to reverse or modify the state-court judgment. It seeks temporary prospective

protection against future entry, seizure, and irreversible disposition while this Court considers Plaintiff's independent federal claims.

## GROUNDS FOR RELIEF

1. The Complaint pleads federal claims under 42 U.S.C. § 1983 for deprivation of property without constitutionally adequate process, unreasonable entry and seizure, and related constitutional violations.

2. The written enforcement authority is presently effective because the Michigan Supreme Court denied leave on May 22, 2026. No additional enforcement letter is required by the October 30, 2025 order before Township entry and removal. There is no formal stay and no defined or reliable written notice period assuring enough time for meaningful judicial review.

3. Plaintiff's Affidavit establishes immediate and irreparable harm: the remaining dogs are unique living property; removal and dispersal threaten permanent separation, transfer, adoption, sale, euthanasia, loss of unique genetic lines, and destruction of a forty-two-year breeding program that money cannot restore.

4. Repeated inspections did not result in findings of neglect, abuse, cruelty, dangerous animals, or nuisance. A short status-quo order will not create a new public or animal-welfare harm.

5. Plaintiff is likely to succeed on at least one federal claim or has raised serious merits questions. The existing order authorizes broad entry and removal without identifying the dogs subject to removal or establishing advance-notice, identification, inventory, custody, care, transfer, return, or disposition safeguards.

6. The balance of equities and public interest favor a brief pause so that irreversible government action does not occur before meaningful federal review.

7. To the extent 28 U.S.C. § 2283 is implicated, 42 U.S.C. § 1983 is an expressly authorized exception under Mitchum v. Foster, 407 U.S. 225, 242–43 (1972). Plaintiff nevertheless requests only narrow prospective relief.

8. Plaintiff requests waiver of security under Fed. R. Civ. P. 65(c), or a nominal bond of $100, because the injunction would only preserve existing possession and the Township faces no demonstrated monetary loss from a short pause.

**NOTICE AND CONCURRENCE**

At 4:33 p.m. EDT on August 3, 2026, counsel emailed the complete noticed Rule 65 package to known Township counsel, Michael J. Gildner, at mgildner@sfplaw.com. At 4:55 p.m. EDT, Sue Kelly, counsel's legal assistant, called Mr. Gildner's office and left a voicemail requesting the Township's position on concurrence and confirmation of any formal stay or defined advance-notice protection. No response had been received as of August 4, 2026. The

4

accompanying attorney declaration documents these efforts. Counsel could not confer despite timely reasonable efforts. E.D. Mich. LR 7.1(a)(2)(B). The email notice was not formal service of process under Fed. R. Civ. P. 4.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

A. enter the proposed temporary restraining order immediately during normal business hours;

B. set an expedited response deadline and, if the Court finds a hearing useful, an expedited hearing on the temporary-restraint request;

C. permit Plaintiff to file a preliminary-injunction motion promptly after formal service of the summons and Complaint;

D. waive security or require only a nominal $100 bond; and

E. grant such further narrowly tailored relief as is necessary to preserve the present status quo.

Respectfully submitted,
/s/ Michelle LG Dallaire
Michelle LG Dallaire, JD, LLM (P51462)
Attorney for Plaintiff Sharon Schutte
21420 Parker Street
Farmington Hills, MI 48336
248-767-0239
mlgullet@umich.edu

Dated: August 4, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SHARON SCHUTTE,**
Plaintiff,

v.

**IMLAY TOWNSHIP, IMLAY TOWNSHIP BOARD,**
**UNKNOWN IMLAY TOWNSHIP OFFICIALS, in**
**their official and individual capacities, and**
**JOHN/JANE DOE GOVERNMENTAL ACTORS 1–**
**20, whose identities are presently unknown,**
Defendants.

Case No. 2:26-cv-12671-
LVP-DRG
Hon. Linda V. Parker;

Mag. Judge David R.

Grand

---

**EMERGENCY — IMMEDIATE REVIEW REQUESTED DURING**
**NORMAL BUSINESS HOURS**
**NO AFTER-HOURS JUDICIAL REVIEW IS REQUESTED**
**BRIEF IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY**
**RESTRAINING ORDER**

**CONCISE STATEMENT OF ISSUES PRESENTED**

1. Whether the Court should preserve the status quo where a written enforcement

   order now permits Township entry onto Plaintiff's property and into structures

   to remove dogs, no further notice is required by that order, no formal stay or

   defined advance-notice protection exists, and irreversible removal or

   disposition could occur before federal review.

2. Whether Plaintiff has shown a likelihood of success or serious merits questions

   on prospective federal claims concerning constitutionally adequate process

1

and reasonable entry and seizure, without asking this Court to reverse the state-court judgment.

3. Whether the Anti-Injunction Act permits narrowly tailored relief in this § 1983 action, and whether Rooker–Feldman and preclusion do not bar independent claims directed to threatened future enforcement and its implementation.

4. Whether irreparable harm, the balance of equities, and the public interest favor a brief status-quo order where the remaining unique dogs and a forty-two-year bloodline may be irreversibly dispersed, transferred, adopted, sold, or euthanized, while no animal-welfare, dangerous-animal, or nuisance emergency is alleged.

5. Whether security should be waived or set at a nominal amount.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

• Fed. R. Civ. P. 65; E.D. Mich. LR 65.1; E.D. Mich. LR 7.1.

• Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 24 (2008).

• Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007).

• Mathews v. Eldridge, 424 U.S. 319, 333, 335 (1976); Fuentes v. Shevin, 407 U.S. 67, 80–82 (1972).

• Soldal v. Cook County, 506 U.S. 56, 61–62 (1992); Brown v. Battle Creek Police Department, 844 F.3d 556, 566–67 (6th Cir. 2016).

• Mitchum v. Foster, 407 U.S. 225, 242–43 (1972).

• Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); Skinner v. Switzer, 562 U.S. 521, 532 (2011); McCormick v. Braverman, 451 F.3d 382, 393–95 (6th Cir. 2006).

• 28 U.S.C. § 1738; Migra v. Warren City School District Board of Education, 465 U.S. 75, 81 (1984).

• Monell v. Department of Social Services, 436 U.S. 658, 690–91 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986).

• Moltan Co. v. Eagle-Picher Industries, Inc., 55 F.3d 1171, 1176 (6th Cir. 1995).

3

**INTRODUCTION**

This emergency request is narrow. Plaintiff asks only that her remaining dogs stay where they are until the Court can conduct meaningful review. Her signed June 17, 2026 Affidavit states that twelve dogs remained at that time; counsel presently understands that the number may now be lower because Plaintiff has continued placements. The October 30, 2025 state-court order provides that, after disposition of the Michigan Supreme Court application, the Township may enter Plaintiff's property and structures and remove dogs. Ex. 2 at 2. The Michigan Supreme Court denied leave on May 22, 2026. Ex. 3. The written stay has therefore expired by its own terms.

Plaintiff does not ask this Court to sit as an appellate court or to vacate the state judgment. She challenges the threatened future implementation of broad enforcement authority—entry into private property and structures, identification and seizure of animals, and the risk of transfer or final disposition—before constitutionally adequate and reasonable procedures are supplied. The requested order would not award Plaintiff ultimate possession forever. It would preserve possession briefly so the federal issues can be heard before the remedy becomes irreversible.

4

## FACTUAL BACKGROUND

1. Sharon Schutte has owned and maintained Shetland Sheepdogs openly on her Imlay Township property since 2003. She states that the dogs were licensed, that her use predated the 2009 ordinance changes, and that she relied on a 2016 Township process and agreement to reduce the number of dogs over time. Ex. 1, Aff. ¶¶ 2–16.

2. The number has been reduced from approximately forty dogs to twelve. Id. ¶¶ 13–16. She states that repeated animal-control inspections did not result in findings of neglect, abuse, dangerous animals, unsanitary conditions, or nuisance; the Township's objection has been numerical. Id. ¶¶ 17–27.

3. The October 30, 2025 order states that upon disposition of the Michigan Supreme Court application, the stay expires and the Township may take enforcement action, including entry onto the property and into structures to remove dogs. Ex. 2 at 2. The Michigan Supreme Court denied leave on May 22, 2026. Ex. 3.

4. The order does not itself require additional notice before entry, identify the particular dogs subject to removal, or establish safeguards for inventory, care, custody, transfer, return, or final disposition.

5. On May 26, 2026, Township counsel declined Plaintiff's counsel's request for a formal stay but stated that counsel would receive a heads-up before the

5

Township took action. The communication did not define the amount or method of notice. Later follow-up emails received no response. Ex. 4. No formal stay or defined written notice protection now exists.

6. Schutte states that removal and dispersal would destroy unique relationships, a tail-female bloodline maintained for approximately forty-two years, and a lifetime preservation-breeding program. Ex. 1, Aff. ¶¶ 35–53. Transfer, adoption, sale, or euthanasia cannot be undone by a later damages award.

## ARGUMENT

### I. The Rule 65 factors favor immediate preservation of the status quo.

A party seeking preliminary injunctive relief must show a likelihood of success, likely irreparable harm, that the balance of equities favors relief, and that an injunction serves the public interest. Winter, 555 U.S. at 20. The Sixth Circuit treats the familiar factors as considerations to be balanced rather than rigid prerequisites. Certified Restoration, 511 F.3d at 542. Where the government is the opposing party, the balance-of-equities and public-interest inquiries substantially overlap. Nken v. Holder, 556 U.S. 418, 435 (2009).

### A. Plaintiff presents substantial merits questions on procedural due process.

Dogs are property protected by the Constitution. Brown, 844 F.3d at 566–67. Due process ordinarily requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before the government finally deprives a person

6

of protected property. Mathews, 424 U.S. at 333, 335; Fuentes, 407 U.S. at 80–82. The inquiry considers the private interest, the risk of erroneous deprivation and value of additional safeguards, and the governmental interest. Mathews, 424 U.S. at 335.

The private interests are exceptionally weighty: possession of her unique living animals; protection of the home and structures from entry; and preservation of bloodlines and relationships that cannot be recreated. The risk of error is substantial because the written authority does not identify which dogs are in violation, particularize how they will be selected, require advance notice of the date or manner of removal, or prescribe inventory, custody, care, transfer, return, and disposition safeguards. Modest additional procedures—advance notice, identification of the specific dogs, an opportunity to be heard, and a no-disposition safeguard—have obvious value. The Township's interest in immediate removal is limited by the absence of alleged neglect, abuse, dangerous-animal, or nuisance findings and by the dogs' longstanding presence.

The state proceedings are part of the background, but Plaintiff's claim is also directed to what must occur before the Township carries out a future entry and seizure. That implementation question, and the absence of safeguards against dispersal or final disposition before review, present at least serious constitutional questions.

**B. Plaintiff presents substantial merits questions under the Fourth Amendment.**

Governmental entry onto property and into structures, and the taking of dogs, implicate the Fourth Amendment. Soldal, 506 U.S. at 61–62; Brown, 844 F.3d at 566–67. Even when government possesses legal authority to enforce a civil order, the manner and scope of entry and seizure must be reasonable. See Soldal, 506 U.S. at 71.

Here the order's language broadly permits entry onto the property and into structures "for purposes of removing dogs" but does not identify the dogs, prescribe the scope or timing of entry, or establish handling and disposition procedures. Ex. 2 at 2. Plaintiff does not ask the Court to declare that no enforcement can ever occur. She asks the Court to prevent an unparticularized and potentially irreversible entry and seizure until the federal reasonableness and process issues can be heard.

**C. The remaining claims reinforce the need for a short status-quo order.**

The Complaint preserves alternative substantive-due-process and class-of-one/selective-enforcement claims. Village of Willowbrook v. Olech recognizes a class-of-one claim where a plaintiff is intentionally treated differently from similarly situated persons without a rational basis. 528 U.S. 562, 564 (2000). Schutte alleges that repeated inspections found no neglect, abuse, dangerous-

8

animal, or nuisance condition, while other remotely similar situations involved neglect or abuse. Ex. 1, Aff. ¶¶ 17–27. The Complaint also preserves related state-law equitable-estoppel, vested-rights, grandfathered-use, and nonconforming-use claims under 28 U.S.C. § 1367.

These theories need not all be finally resolved today. They show why a short injunction is appropriate while the Court determines the proper scope of federal adjudication and the record is completed.

**D. The Township's threatened acts are municipal action under Monell.**

A municipality is liable under § 1983 when the constitutional injury results from official policy, custom, or a decision by an official with final policymaking authority. Monell, 436 U.S. at 690–91; Pembaur, 475 U.S. at 480–81. Imlay Township itself filed and prosecuted the enforcement action. The prospective decision whether and how to invoke the written entry-and-removal authority, direct officers or contractors, select dogs, and arrange custody or disposition will be a Township enforcement decision, not an unauthorized private act. At the pleading stage, those allegations adequately connect the threatened conduct to the Township and its governing/final enforcement authority.

**E. Irreparable harm is immediate and cannot be repaired by money.**

The written stay expired when the Michigan Supreme Court denied leave. Exs. 2-3. The order does not require a new letter or additional warning before entry and

9

removal. Township counsel declined a formal stay, and the promised heads-up contains no defined notice period or method. Ex. 4. Plaintiff therefore lacks a reliable protection assuring enough time to obtain meaningful judicial review before the status quo is lost.

If the dogs are removed and dispersed, later relief may come too late. A transferred or adopted animal may not be recoverable; euthanasia is permanent; bloodlines and a forty-two-year breeding program cannot be reconstructed; and separation itself harms unique relationships. Ex. 1, Aff. ¶¶ 35–53. Constitutional deprivations and loss of unique property for which damages are inadequate support irreparable harm. See Overstreet v. Lexington-Fayette Urban County Government, 305 F.3d 566, 578 (6th Cir. 2002).

**F. The balance of equities and public interest favor a narrow pause.**

Plaintiff asks only that the dogs remain where they have long remained while the Court reviews the claims. The Township loses no adjudicated monetary entitlement and suffers no identified animal-welfare or public-safety harm from a short pause. By contrast, Plaintiff risks irreversible loss. The public has a strong interest in constitutional enforcement, orderly judicial review, and avoiding government action that cannot be undone. The requested order contains a carveout for a genuine exigency involving immediate danger to human or animal safety and therefore does not obstruct legitimate emergency action.

10

**II. Threshold jurisdictional doctrines do not require denial of temporary prospective relief.**

**A. The claims are ripe and Plaintiff has standing.**

A pre-enforcement plaintiff need not wait for the threatened injury to occur where there is an intention to engage in protected conduct, a credible threat of enforcement, and a substantial risk of harm. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158–61 (2014). Here the threat is not speculative policy language: the Township obtained a case-specific order expressly authorizing entry and removal after the Michigan Supreme Court disposition, and that disposition has occurred. Exs. 2–3. The threatened injury is sufficiently concrete for prospective review.

**B. Rooker–Feldman does not bar independent claims concerning future enforcement.**

Rooker–Feldman is narrow. It applies to cases brought by state-court losers complaining of injuries caused by a state judgment and inviting federal review and rejection of that judgment. Exxon Mobil, 544 U.S. at 284. A federal plaintiff may present an independent claim even where the same or a related question was previously litigated. Skinner, 562 U.S. at 532. The Sixth Circuit asks whether the source of the injury is the state judgment itself or independent conduct. McCormick, 451 F.3d at 393–95.

11

Plaintiff expressly disclaims appellate relief. She does not ask this Court to reverse the state merits judgment. She asks for a prospective ruling on the constitutionality and reasonableness of future Township conduct: entry, identification and seizure of dogs, and transfer or disposition without additional safeguards. The Court can preserve the status quo and adjudicate those independent implementation claims without declaring the state judgment void.

## C. The Anti-Injunction Act permits appropriate § 1983 relief.

The Anti-Injunction Act bars injunctions staying state proceedings except as expressly authorized by Congress, necessary in aid of federal jurisdiction, or necessary to protect or effectuate federal judgments. 28 U.S.C. § 2283. Mitchum holds that § 1983 is an expressly authorized exception. 407 U.S. at 242–43. The exception does not compel relief; traditional equity, federalism, and comity remain relevant. Id. at 243. Those concerns are respected here because the requested order is temporary, narrow, directed to prospective Township conduct, and preserves rather than alters the present possession of the dogs.

## D. Preclusion does not eliminate the post-judgment implementation claims at this stage.

Under 28 U.S.C. § 1738, a federal court gives a state judgment the same preclusive effect it would receive in the rendering state. Migra, 465 U.S. at 81. Plaintiff does not contend that preclusion can never limit an issue or claim. But preclusion is a

merits defense requiring careful comparison of parties, claims, issues actually litigated and necessarily decided, and the operative facts.

The emergency claims include post-judgment and future conduct: whether the Township may implement broad entry-and-removal authority without further notice, identification, inventory, custody, care, transfer, return, and disposition safeguards, and whether the manner and scope of seizure will be reasonable. The present record does not establish that those implementation questions were actually and necessarily decided. At minimum, the Court should preserve the status quo long enough to receive focused briefing rather than permit the disputed property to be irreversibly dispersed first.

**E. Prospective relief against the Township is not barred by governmental immunity.**

Municipalities are "persons" under § 1983 and do not possess qualified immunity. Monell, 436 U.S. at 690; Owen v. City of Independence, 445 U.S. 622, 657 (1980). Plaintiff seeks primarily prospective declaratory and injunctive relief against Imlay Township and officials acting for it. The Eleventh Amendment does not transform a Michigan general-law township into the State for this purpose.

13

**III. The request complies with Rule 65 and the Eastern District's local rules.**

**A. Plaintiff requests a noticed TRO and will defer a preliminary-injunction motion until formal service.**

At 4:33 p.m. EDT on August 3, 2026, Plaintiff emailed the complete noticed Rule 65 package to Mr. Gildner. At 4:55 p.m. EDT, legal assistant Sue Kelly called his office and left a voicemail requesting the Township's position and confirmation of any formal stay or defined advance-notice protection. No response had been received as of August 4, 2026. The attorney declaration documents these efforts. Plaintiff does not request ex parte or after-hours review and will defer a preliminary-injunction motion until Imlay Township has been formally served with the summons and Complaint.

Email transmission to known counsel provides advance Rule 65 notice only. It is not represented as formal service of the summons and Complaint under Rule 4. Formal service is being arranged.

**B. The motion is separately filed and complies with LR 65.1 and LR 7.1.**

The emergency request is made by a separate motion rather than an order to show cause, as LR 65.1 requires. The supporting brief begins with a concise statement of issues followed on the next page by controlling or most appropriate authorities. Counsel supplied the complete papers to Township counsel, attempted actual telephone contact, and documented the result in the attorney declaration. Counsel

14

could not confer despite timely reasonable efforts beginning the previous day. LR

7.1(a)(2)(B).

## C. Security should be waived or nominal.

Rule 65(c) permits the Court to require security in an amount it considers proper.

The Sixth Circuit recognizes discretion to waive security. Moltan, 55 F.3d at 1176.

A bond should be waived because the injunction only preserves the present

location of the dogs and no measurable loss to the Township is shown.

Alternatively, a nominal $100 bond is sufficient.

## CONCLUSION

Plaintiff respectfully requests an immediate noticed temporary restraining order

preserving the present status quo, expedited scheduling appropriate to that request,

and waiver of security or a nominal $100 bond. Plaintiff will seek preliminary-

injunction relief after formal service in accordance with Judge Parker's practice

guidelines.

Respectfully submitted,
/s/ Michelle LG Dallaire
Michelle LG Dallaire, JD, LLM (P51462)
Attorney for Plaintiff Sharon Schutte
21420 Parker Street
Farmington Hills, MI 48336
248-767-0239
mlgullet@umich.edu

Dated: August 4, 2026

15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SHARON SCHUTTE,**
Plaintiff,

v.

**IMLAY TOWNSHIP, IMLAY TOWNSHIP BOARD,**
**UNKNOWN IMLAY TOWNSHIP OFFICIALS, in**
**their official and individual capacities, and**
**JOHN/JANE DOE GOVERNMENTAL ACTORS 1–**
**20, whose identities are presently unknown,**
Defendants.

Case No. 2:26-cv-12671-LVP-DRG

Hon. Linda V. Parker;

Mag. Judge David R. Grand

---

**EMERGENCY — IMMEDIATE REVIEW REQUESTED DURING**
**NORMAL BUSINESS HOURS**
**NO AFTER-HOURS JUDICIAL REVIEW IS REQUESTED**
**ATTORNEY DECLARATION REGARDING STAY REQUEST, RULE 65**
**NOTICE, CONCURRENCE, AND SERVICE**

I, Michelle LG Dallaire, declare under penalty of perjury under the laws of the

United States as follows:

1. I am counsel for Plaintiff Sharon Schutte. I make this declaration from personal

knowledge and from my review of my office's email records.

2. On May 26, 2026, after the Michigan Supreme Court denied leave to appeal, I

formally asked Township counsel Michael J. Gildner to agree to a voluntary thirty-

day administrative stay of all enforcement actions.

3. Mr. Gildner responded that he would not agree to any "formal" stay, but stated

that he would give me a "heads-up" when the Township planned to take action.

1

4. Mr. Gildner did not define the amount of advance notice, the method of notice, or any other term of the anticipated "heads-up."

5. I personally followed up on July 1, 2026, and again informally on July 28, 2026, asking how the Township wished to proceed.

6. My assistant, acting at my direction, sent several additional follow-up emails. I also personally sent the two follow-up emails described above. No further response was received from Mr. Gildner.

7. As of August 3, 2026, no Township entry or removal has occurred, and no new Township enforcement communication has been received since July 29, 2026.

8. There is no formal stay and no written agreement or order defining any advance-notice period, notice method, or other reliable protection that would assure sufficient time for meaningful judicial review before enforcement.

9. I do not characterize the unanswered follow-up emails as an explicit enforcement threat. The emergency arises from the October 30, 2025 written enforcement authority, the May 22, 2026 expiration of the state-court stay, and the absence of a formal stay or defined advance-notice protection.

10. Plaintiff seeks a noticed temporary restraining order. Plaintiff does not request ex parte relief or after-hours judicial review. Plaintiff will defer a preliminary-injunction motion until Imlay Township has been formally served with the summons and Complaint.

2

11. On August 3, 2026, at 4:33 p.m. EDT, I sent Rule 65 notice by email to Michael J. Gildner at mgildner@sfplaw.com.

12. The email included the filed Complaint; Emergency Motion for Temporary Restraining Order; supporting Brief; signed and notarized Affidavit of Sharon Schutte; October 30, 2025 state-court order; May 22, 2026 Michigan Supreme Court denial; Gildner communications; proposed Temporary Restraining Order; Emergency TRO Exhibit Index; and Notice and Request for Reasonable Accommodations and Confidential Handling of Supporting Medical Information.

13. At my direction, Sue Kelly, my legal assistant, called Mr. Gildner's office on August 3, 2026, at 4:55 p.m. EDT and left a voicemail requesting the Township's position on concurrence and confirmation of any formal stay or defined advance-notice protection. No response from Mr. Gildner had been received as of August 4, 2026.

14. The email transmission described above was advance notice for the Rule 65 request only. It was not formal service of process under Fed. R. Civ. P. 4 and did not replace service of the issued summons and Complaint on Imlay Township under Rule 4(j)(2).

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2026, in Farmington Hills, Michigan.

3

Respectfully submitted,

/s/ Michelle LG Dallaire

Michelle LG Dallaire, JD, LLM (P51462)

Attorney for Plaintiff Sharon Schutte

21420 Parker Street

Farmington Hills, MI 48336

248-767-0239

mlgullet@umich.edu

4